UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, <br><br> Plaintiff-Applicant, <br><br> -v- <br><br> BERNARD L. MADOFF INVESTMENT SECURITIES LLC, <br><br> Defendant. | Adv. Pro. No. 08-01789 <br><br> SIPA LIQUIDATION <br><br> (Substantively Consolidated) |
| In re <br><br> BERNARD L. MADOFF, <br><br> Debtor. | 21-CV-8678 (JPO) <br><br> <u>AMENDED OPINION AND ORDER</u> |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff, <br><br> Plaintiff, <br><br> v. <br><br> THE GERALD AND BARBARA KELLER FAMILY TRUST, GERALD E. KELLER, individually and in his capacity as Trustee of the Gerald and Barbara Keller Family Trust, BARBARA KELLER, individually and in her capacity as Trustee of the Gerald and Barbara Keller Family Trust, <br><br> Defendants. | |

1

J. PAUL OETKEN, District Judge:

This is an appeal from a decision by the bankruptcy court granting summary judgment in an adversary proceeding in favor of the plaintiff below, Irving H. Picard ("Trustee"), Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff"), and denying the cross-motion for summary judgment filed by defendants the Gerald and Barbara Keller Family Trust ("Keller Trust"), and Gerald E. Keller and Barbara Keller in their capacity as trustees (collectively, "Appellants"). *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 634 B.R. 39 (Bankr. S.D.N.Y. 2021) ("*Bankruptcy Decision*"). The underlying case concerns the Trustee's claim to avoid and recover $1,896,148 of funds in excess of principal transferred by BLMIS to Appellants in the two years prior to BLMIS's bankruptcy filing.

I.   Background

This case has an extensive history and background, but "the litigation stemming from the Ponzi scheme Madoff ran through BLMIS, his broker-dealer firm, is well known" in this Circuit, and so does not require detailed explanation here. *See Picard, Tr. for SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, No. 21-872, 2022 WL 4350114, at *2 (2d Cir. Sept. 20, 2022) (explaining the background and collecting cases) ("*JABA*"). In short, Madoff operated three businesses through BLMIS: (1) a proprietary trading business; (2) a market-making business; and (3) an investment advisory (IA) business. BLMIS collected funds from brokerage customers and purported to invest them, but instead sent fabricated statements. When customers sought to withdraw money from their fictitious gains, BLMIS satisfied those requests with the proceeds of other customers' investments, which were held in a commingled checking account. *See, e.g.*, *JABA* at *2. The scheme collapsed in 2008, when the accounts

lacked the capital to satisfy withdrawal requests. The Securities Investor Protection Corporation then applied for an order granting BLMIS customers protection under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq*, and Irving Picard was appointed as Trustee for BLMIS. *Id.* Under SIPA, disbursements to "good faith" customers from BLMIS may be recovered by the debtor—i.e., the BLMIS LLC—from the two-year period prior to the SIPA filing. *Id.*

This appeal specifically concerns two JPMorgan Chase bank accounts in which BLMIS commingled customer money: a commercial checking account (the "703 Account") and a controlled disbursement account (the "509 Account"). In 1997, Gerald Keller opened an account ("Keller Trust Account") with the IA business of BLMIS. At the time, BLMIS, including the IA business, operated as a sole proprietorship. *Bankruptcy Decision* at *43. Keller opened the account with a $1,000,000 deposit. *Id.* In 1999, he renamed the account "Gerald E. Keller, Trustee The Gerald and Barbara Keller Family Trust U/A June 2, 1998" and then "Gerald E. Keller (Gerald E. Keller Separate Property) The Gerald and Barbara Keller Family Trust U/A June 2, 1998." *Id.* Additional investments were made into the account totaling $1,898,852 in 1999 and 2006. *Id.* At least the latter two were deposited into the 703 Account, which funded the 509 account. *Id.* Customer disbursements from BLMIS came from both the 703 Account and the 509 Account. *JABA* at *2. During the two-year SIPA collection period, $2,125,000 was withdrawn from the Keller Trust Account, $1,896,148 in excess of the principal deposited into the account. *Bankruptcy Decision* at *44.

In 2001, Madoff reorganized BLMIS as an LLC and informed the SEC by filing an Amended Form BD. *JABA* at *3. The central question in this appeal is whether the IA

3

business—specifically, the money transferred from the Keller Trust Account—was owned by the LLC, or continued to be owned independently by Madoff through a sole proprietorship.

## II. Standard of Review

On appeal, a district court reviews a bankruptcy court's order granting summary judgment *de novo*. *See In re Lehman Bros. Holdings Inc.*, 526 B.R. 481, 492 (S.D.N.Y. 2014). The evidence considered on summary judgment "must generally be admissible evidence." *LaSalle Bank Nat. Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 205 (2d Cir. 2005); *see also Raskin v. Wyatt Co.*, 125 F.3d 55, 65–67 (2d Cir. 1997) (same). Evidentiary rulings by the bankruptcy court are reviewed for "abuse of discretion" and are upheld absent a finding of "manifest error." *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003). Even an "erroneous ruling will not lead to reversal unless affirmance would be 'inconsistent with substantial justice.'" *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 620 (2d Cir. 1991) (quoting Fed. R. Civ. P. 61)). A decision to grant prejudgment interest is "confided to the [] court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion." *SEC v. Contorinis*, 743 F.3d 296, 307 (2d Cir. 2014) (quoting *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1071–72 (2d Cir. 1995)).

## III. Discussion

### A. Summary Judgment as to Transfer of Property to the LLC

Appellants argue that the Bankruptcy Court erred in granting summary judgment to the Trustee. They contend (1) that *Picard v. Avellino (In re BLMIS)*, 557 B.R. 89 (Bankr. S.D.N.Y. 2016), bars the Trustee from recovering in this case; (2) that they conclusively showed that the IA business never became part of the LLC; (3) that even if they had not, the Trustee did not raise a genuine dispute of material fact that the LLC owned the IA business because the Trustee's

4

argument and the Bankruptcy Court's holding considered documentary evidence produced by Madoff, which they argue is *de facto* unreliable; (4) that even if there was a dispute of material fact, the Bankruptcy Court should have followed Judge Furman in *Picard v. RAR Entrepreneurial Fund, Ltd.*, 20 Civ. 1029, 2021 WL 827195 (2021) ("*RAR*") in requiring a trial; and (5) that the Bankruptcy Court erred by applying the "Ponzi scheme presumption" to conclude that the transfers were made with intent to defraud. (*See* Dkt. No. 9.)

The record of this case is nearly identical to the record considered by the Second Circuit in *JABA*, which controls. There, the Second Circuit considered and rejected nearly all of these arguments.

First, the Second Circuit explained that *Avellino* does not bar the Trustee from recovering in this case. *See JABA* at *4 (explaining that "in this case the Trustee only seeks to recover two-year transfers, which the bankruptcy court in *Avellino* held the Trustee may avoid and recover against similarly situated defendants.").

Second, the Second Circuit evaluated the *JABA* defendants' arguments and supporting evidence that the IA business continued independently of the LLC as a sole proprietorship after 2001, and continued to hold the 703 Account and the 509 Account. The *JABA* defendants made many of the same arguments as Appellants here, including "inconsistencies in the name on the JPMorgan accounts, the name on the endorsement stamp for the 703 Account, and the name used on the 509 Account checks." *Id.* at *8. The Second Circuit held that "this sparse evidence is insufficient to create a dispute of material fact." *Id.*

Appellants additionally argue that their contractual relationship, to their knowledge, remained with Madoff, instead of the LLC, and surmise that rather than consolidating the IA business into the LLC, he hid it from the SEC. (*See* Dkt. No. 9 at 23–24.) Appellants also

5

contend that Madoff used the IA money to purchase T-Bills, suggesting that the IA business was legitimate. The Bankruptcy Court correctly followed precedent in holding that the issue regarding the T-Bills is immaterial. *See Bankruptcy Decision* at *52 (collecting cases).

Ultimately, these additional arguments do not change the final calculus, for as the Second Circuit held in *JABA,* Appellants' argument "ignores the overwhelming evidence that BLMIS took over all aspects of the sole proprietorship." *JABA* at *8. The Second Circuit cites the same evidence that persuaded Judge Morris below: that when Madoff converted BLMIS into an LLC, he indicated he would change the corporate form and retain the same SEC registrant number, that he intended to transfer all of the predecessor's assets to the successor and that it would not result in change in ownership or control, and that after the assets transferred to the LLC no "accounts, funds, or securities of customers of the applicant are held by or maintained by [any] other person, firm, or organization." *Id.* at *8.

Third, the Second Circuit also addressed Appellants' contention that the forms that provide this evidence are inadmissible hearsay, concluding that "the fact that Madoff himself was untrustworthy does not necessarily make the Amended Form BD itself untrustworthy." *Id.* at *7. The Court held that the *JABA* defendants therefore failed to meet their burden of showing that the source of the information, method, or circumstance of preparation indicate a lack of trustworthiness. Here, too, Appellants rely on the fact that the document is "Madoff-authored" and Madoff is "one of the biggest fraudsters in the history of the world." (Dkt. No. 9. At 26.) As in *JABA*, this argument is insufficient to carry Appellants' burden.

Fourth, the Second Circuit also directly considered whether the court should have followed Judge Furman's decision in *RAR* and required a trial, rejecting this argument. On the same record as the one here, the court "affirm[ed] the district court's finding that the record did

not raise a question of material fact as to whether BLMIS owned the JPMorgan accounts." *JABA* at *9.

Fifth and finally, the defendants in *JABA* did not appeal their argument regarding the Ponzi scheme presumption, and so it was not considered by the Second Circuit. Appellants here do raise this argument, contending that the Court should ignore the Ponzi scheme presumption and take guidance from Judge Menashi's concurrence in *In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 200 (2d Cir. 2021) ("*Citibank*"). This would require the Trustee to make an independent showing of intent to defraud.

In *Citibank*, Judge Menashi contrasted the Ponzi scheme presumption with the Second Circuit's decision in *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 54 (2d Cir. 2005) ("*Sharp*"). However, in *In re Bernard L. Madoff Inv. Sec. LLC*, 976 F.3d 184, 200–01 (2d Cir. 2020) ("*Gettinger*"), the Second Circuit expressly held that the reasoning in *Sharp* is inapplicable to a SIPA liquidation. While Appellants ask this Court to reconsider *Gettinger* in light of Judge Menashi's concurrence in *Citibank*, this Court is controlled by the Second Circuit and its majority decisions. The Bankruptcy Court's reasoning below stands.

Accordingly, and in agreement with the Second Circuit's reasoning in *JABA*, the Bankruptcy Court properly granted summary judgment to the Trustee.

### B. Barbara Keller and the Keller Trust as a Conduit

Appellants also argue that the Bankruptcy Court should have dismissed Barbara Keller, who died in 2019, as a Defendant, and that the Bankruptcy Court should have found that the Keller Trust was a mere conduit and therefore not liable.

The Bankruptcy Court correctly described the issue as to Barbara Keller as a red herring. *Bankruptcy Decision* at *48. All counts against Barbara Keller in her individual capacity were dismissed, and her successor under the family trust would be Gerald Keller, who is already party to this action. *Id.* Moreover, while Appellants contend there was "an expedient procedure" by which they notified the Trustee of her death that was "blessed by Judge Bernstein," they have not provided evidence of this procedure or agreement. Federal Rule of Civil Procedure 25(a)(1) provides for substitution after the death of a party, but only *after* service of a statement noting the death. Rule 2(a)(3) notes that this must be served as provided in Rule 5, which states that if service is made by an alternative means, the means must have been consented to *in writing*. *See* Fed. R. Civ. P. 5(E)–(F). Appellants have not produced evidence of such an agreement, and so Rule 25(a)(1) has not yet been triggered. If they wish to compel the Trustee to substitute a party for Barbara Keller as trustee of the Keller Trust, they may serve notice of her death in accordance with Rule 25(a)(3). The Bankruptcy Court's decision is affirmed.

Appellants also raise the defense that the Keller Trust was a mere conduit and that Keller Publishing was the transferee. In order to establish a mere conduit defense, Appellants must establish that they lacked "dominion and control" over the money, *Miller v Porush*, 234 B.R. 293, 313 (Bankr. S.D.N.Y. 1999), which they may do by establishing a contractual obligation to dispose of the money in a certain way. *Christy v. Alexander & Alexander of N.Y., Inc.* (*In re Finley, Kumble, Wagner, Heine, Underberg, Manly, Myerson & Casey*), 130 F.3d 52, 59 (2d Cir. 1997). "To establish the existence of an enforceable agreement, a [party] must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43, 46 (N.Y. App. Div. 1st Dep't 2009).

The Bankruptcy Court below evaluated the facts and concluded that this argument was "meritless." *Bankruptcy Decision* at *52. This conclusion rested on its determination that the declarations discussing the nature of the agreement for Keller Publishing to receive withdrawals from the Family Trust's BLMIS account were inconsistent, and that Appellants had not demonstrated a true oral contract including an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound. This Court agrees.

Appellants argue that the Bankruptcy Court's conclusion that there was an inconsistency, and therefore no mutual assent, rests on a misreading of Gerald Keller's declaration, Case No. 10-04539, ECF 114 ("Keller Decl."), to conclude that Keller represented himself as having made an individual agreement with Keller Publishing, not an agreement as a Trustee. (*See* Dkt. No. 9 at 33 (stating "this error was based on the court's factual determination that the agreement was actually between Keller Publishing and Mr. Keller, individually.").) They also argue that Keller "in his individual capacity was not, nor could he have been, party to an agreement to transmit Keller Trust withdrawals directly to Keller Publishing," because Gerald Keller as an individual was not Madoff's customer. (Dkt. No. 9 at 34.)

The Keller Declaration itself, in paragraph 4, states that "[o]ver the entire life of the account, every request for a withdrawal was sent under my name, *not as Trustee but as an individual*, with the address of Keller International Publishing Corp." (emphasis added). Keller then states that "pursuant to an oral agreement *I* had with Mr. Levine, he could draw down funds from the Madoff account whenever Keller Publishing needed working capital." (Keller Decl. ¶ 5) (emphasis added).

The Bankruptcy Court found that this declaration indicated that Gerald Keller made an agreement with Mr. Levine as an individual, and thus that it was inconsistent with Levine's

9

declaration, in which he characterized the agreement as between him and the Family Trust. *See Bankruptcy Decision* at *50. But the Court's ultimate conclusion did not rest wholly on the issue of mutual assent. Though Appellants argue that the Bankruptcy Court erred by not construing the declarations in the light most favorable to them as the non-moving party, the Court in fact explained that "[e]ven taking the declarations at face value—and disregarding the contradictory parts—there is no support for the Defendants' argument that there was a binding contract between the Family Trust and Keller Publishing." *Id.* at *51.

Appellants fail to counter the Bankruptcy Court's finding that "[n]either the Keller nor the Levine declarations demonstrate an offer and acceptance," nor "show that there was any consideration for this supposed agreement." *Bankruptcy Decision* at *50–51. If evidence that the agreement was binding exists, it is Appellants' burden to offer it, and they have not. The Bankruptcy Court's decision is affirmed.

### C. Prejudgment Interest

Finally, Appellants contend that the Bankruptcy Judge abused her discretion in awarding prejudgment interest at the rate of 4%, without compounding, commencing on December 1, 2010 through the date of the entry of judgment in this case. *Bankruptcy Decision* at *53. In support of this award, Judge Morris cites *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 528 F. Supp. 3d 219, 246 (S.D.N.Y. 2021) No. 21-872, *aff'd sub nom. Picard, Tr. For SIPA liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 2022 WL 4350114 (2d Cir. Sept. 20, 2022) — the very decision that the Second Circuit affirmed in *JABA. Id.* There, the Second Circuit explained that it could not "find that the district court abused its discretion in awarding prejudgment interest against the defendants" and that a 4 % interest rate "appropriately balanced the equities between the parties." *JABA* at *10. The same holds here.

10

**IV.     Conclusion**

For the foregoing reasons, the Bankruptcy Court's decision below is AFFIRMED.

The Clerk of Court is directed to enter judgment accordingly and to close this matter.

SO ORDERED.

Dated: October 6, 2022[1]
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[1] This amended opinion is issued *nunc pro tunc* as of September 30, 2022.  The sole amendment is the clarification at page 2 that Appellants included Gerald and Barbara Keller in their capacity as trustees and not in their individual capacities.  (*See* Dkt. No. 25.)  The Clerk's Judgment at Docket Number 24 need not be reissued, but shall be deemed to reference and incorporate this amended opinion.